

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MANCARI'S CHRYSLER/JEEP, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNIVERSAL AUTO LEASING, INC., ) <br> a foreign corporation doing business ) <br> in Illinois, HAIM GOLDENBERG, ) <br> JOMARK, INC., an Illinois corporation, ) <br> GREGORY M. GEISTLER, BRUNO ) <br> MANCARI, JR. and GINA MANCARI, ) <br> ) <br> Defendants. ) | No. 04 C 6631 |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss and on Defendants' motion for sanctions. For the reasons stated below, we grant the motion to dismiss and deny the motion for sanctions.

## BACKGROUND

Plaintiff Mancari's Chrysler/Jeep, Inc. ("MCJ") alleges that Defendant Bruno Mancari, Jr. ("Bruno") worked for Plaintiff as the used car manager in 1994.

1

According to MCJ, Bruno used his position as the used car manager to conspire to purchase used cars from MCJ at discounted prices and to sell MCJ used autos to the other Defendants at artificially inflated prices. Defendants Haim Goldenberg ("Goldenberg") and Gregory Geistler ("Geistler") allegedly used their companies Universal Auto Leading, Inc. ("Universal") and Haim Goldenberg, Jomark, Inc. ("Jomark") to facilitate the conspiracy. Some of the proceeds of the alleged conspiracy were allegedly funneled to Defendant Gina Mancari, Bruno's wife. MCJ filed an amended complaint in this action alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Defendants Bruno and Gina Mancari ("Defendants') have brought the instant motion to dismiss and motion for sanctions.

## LEGAL STANDARD

In ruling on a motion to dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6) the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *See also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief."). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later."). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

3

## DISCUSSION

Defendants argue that MCJ has failed to allege its fraud-based RICO claims with particularity as is required under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). Defendants complain that the allegations of wrongdoing in the amended complaint are too general and that MCJ fails to refer to any specific actions or transactions by Defendants.

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b), in regards to fraud claims, "is to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual" because, if a fraud claim is too vague during discovery, the claim "will stand unrefuted, placing what may be undue pressure on the defendant to settle the case in order to lift the cloud on its reputation." *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 748-49 (7th Cir. 2005). Rule 9(b) requires a plaintiff to provide sufficient specificity to allow a defendant accused of fraud to respond "swiftly and effectively if the claim is groundless." *Id.*

Rule 9(b) applies to fraud-based RICO claims. *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). To plead a fraud-based RICO claim with particularity a plaintiff must, at a minimum: 1) "describe the predicate acts [of fraud] with some specificity," 2) state the time, place, and content of the alleged fraudulent

communications, 3) and notify each defendant of his or her role in the alleged scheme. *Id.*

In the instant action, MCJ alleges that Defendants took part in "a scheme devised by Defendants to defraud Plaintiff and to procure secret profits from Plaintiff by failing to disclose interests in transactions with Plaintiff." (A. Compl. Par. 1). MCJ alleges that Bruno was the used car manager for MCJ beginning in 1994. (A. Compl. Par. 15(g)). MCJ alleges that sometime in 2000, Bruno sought Defendant Haim Goldenberg ("Goldenberg") and Defendant Gregory M. Geistler ("Geistler") to seek financing for the fraud scheme. (A. Compl. Par. 15(a)). MCJ explains that Bruno had the "authority to purchase and to sell used autos for Plaintiff" and that "he had the authority to determine the prices of what Plaintiff's used cars were brought and sold for on a wholesale basis and t[o] whom or from whom they were brought and sold." (A. Compl. Par. 15(b)(g)). The alleged scheme consisted of certain components. As part of the scheme, Bruno would secretly purchase underpriced used cars in Goldenberg's and Geistler's names at a discount and resell them to MCJ at a profit. (A. Compl. Pa. 15(c)). In addition, Goldenberg and Geistler, would allegedly use their company Universal to purchase used cars from MCJ at a discount price and resell them at a profit. MCJ also alleges that another company run by Goldenberg and Geistler, Jomark would sell automobiles to MCJ at an inflated price and buy automobiles from MCJ at a "below wholesale price. . . ." (A. Compl. Par. 15(o)). MCJ further alleges that Defendant Gina Mancari, Bruno's wife, received

5

some of the proceeds from the unlawful scheme through checks made out to her personally and through checks made out to her by Defendant Universal. The participants involved in the scheme and their roles in the scheme are laid out in the amended complaint. MCJ has not, however, provided the time and place of the alleged fraudulent transactions. In *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016 (7th Cir. 1992), the Seventh Circuit was reviewing a district court's decision to dismiss a fraud-based RICO claim due to a failure to plead with particularity. *Id.* at 1017-18. In *Midwest*, the plaintiff "accused defendants of committing hundreds of acts of mail and wire fraud. . . ." *Id.* at 1019. The plaintiff in *Midwest* argued that "it was unnecessary to list the date of each [pertinent] transaction because to do so would violate Fed.R.Civ.P. 8, which instructs plaintiffs to limit claims in pleadings to a 'short and plain' description." *Id.* at 1020. The plaintiff also argued that "in cases involving a lengthy period of fraud, the exact date and time of each fraudulent act need not be specifically alleged" and that the plaintiff could not be held to as stringent a pleading standard because the defendant possessed the pertinent necessary information. *Id.*

The Court in *Midwest* explicitly rejected all of the above arguments made by the plaintiff. *Id.* The Court reiterated a plaintiff's obligation to "identify the time and place of the alleged predicate acts" and noted that the information at question should have been in the possession of the plaintiff. *Id.* Similarly, in the instant action, although MCJ explains the general aspects of the alleged fraudulent scheme,

MCJ does not provide the time or place of the alleged improper transactions. MCJ states only generally that the scheme was ongoing and "continuous[]" from 2000 to August of 2004. (A. Compl. Par. 4, 15(n)). Absent from the amended complaint are references to the specific transactions that were part of the scheme. Neither can MCJ's failure to provide the necessary information be excused because, according to MCJ, Defendants were the only parties to have access to the information. If MCJ truly believes, as it asserts in its amended complaint, that certain transactions involving the purchase and sale of used autos by MCJ were part of the scheme, then MCJ should have ample documentation of its own transactions and should have been able to produce the dates of the transactions that MCJ believes were part of the scheme. Instead, MCJ alleges only generally that the scheme was "continuous[]." (A. Compl. Par. 4). MCJ alleges that the alleged scheme began "in or about 2000" and thus MCJ provides the Defendants only with notice of possible year that the alleged scheme began and does not even provide Defendants with notice of the month that MCJ believes that the alleged scheme began. (A. Compl. Par. 15(h)).

MCJ argues that they "have provided plaintiffs with copies of records of transactions by and between defendants. . . ." (Ans. 3). However, the inquiry before us at this juncture relates to the allegations in the complaint rather than what documents have been produced by MCJ to Defendants. MCJ also argues that the amended complaint "contains the fist [sic] known example of a predicate act by the two Defendants. . . ." (Ans. 3). The complaint does refer specifically to one

transaction involving a 1998 Lexus that was allegedly purchased by Bruno on behalf of MCJ on August 2, 2004. (A. Compl. Par. 15(r)). However, even if we were to consider that limited reference to the 2004 transaction, it falls far short of MCJ's sweeping allegations that there was a "continuous[]" scheme from 2000 to 2004. In addition, as MCJ acknowledges in its answer, for a RICO claim a plaintiff must show "an enterprise . . . through a pattern . . . of racketeering activity." *Midwest Grinding Co., Inc.*, 976 F.2d at 1019; (Ans. 1). Even if we were to consider the one isolated incident referenced in the amended complaint, it would not be a pattern of activity. Therefore, we conclude that MCJ has not plead sufficient facts to plead its claims with particularity and we grant the motion to dismiss.

Defendants have also filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. The main thrust of Defendants' motion for sanctions is that MCJ wasted Defendants' time by forcing them to respond to a complaint that lacked the requisite specificity and had other deficiencies. Defendants have not shown that MCJ's filing of an amended complaint was done in bad faith or that it was a frivolous filing and we conclude that sanctions are not warranted. Therefore, we deny Defendants' motion for sanctions.

## CONCLUSION

Therefore, based on the foregoing analysis, we grant Defendants' motion to dismiss and deny Defendants' motion for sanctions.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 15, 2005